```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/9/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FAUSTINO PUJOLS,

                                        Plaintiff,

                        -against-

RTS SOLUTIONZ, INC a/k/a SOLUTIONZ ,
INC. *and as successor to Real Time Services, Inc.*,
BILL WARNICK, and KIRK R. FERNANDEZ.,

                                        Defendants.
-------------------------------------------------------------X

**OPINION AND ORDER**

**22-CV-05455 (KHP)**

**KATHARINE H. PARKER, United States Magistrate Judge**

       Plaintiff Faustino Pujols brought an action in this court against his former employer, RTS Solutionz, Inc. ("RTS") and two of its officers, Bill Warnick and Kirk Fernandez.  That case is Index No. 20-cv-10373 (the "2020 Case").  The Complaint in that action was amended three times.  The third amended complaint ("TAC") asserts the following claims: failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); failure to provide accurate wage statements throughout his employment and a new hire notice in violation of Section 195 of the NYLL; discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  (2020 Case, ECF No. 42.)

       In May 2022, Pujols sought permission to file a fourth amended complaint to add a former co-worker, Russ Deckler, as a plaintiff, add two new defendant/officers of RTS, Jill Armand and Kylee Cheeney, and add five new claims.  (2020 Case, ECF No. 53.)  Because permission was sought close to the close of discovery and well after the deadline for amending

the pleading and joining parties, the Honorable Gregory H. Woods denied permission to amend, finding that Pujols did not meet the "good cause" standard for amending the pleading under Federal Rule of Civil Procedure 16(b) ("Rule 16").

Pujols and Deckler then promptly filed an action in state court.  The new claims specific to Pujols were: failure to pay him on a weekly basis in violation of New York Labor Law § 191; paying him less than non-disabled co-workers in violation of New York Labor Law § 194; failure to pay accrued unused sick time in violation of the New York City Sick Leave Act; fraud in connection with the furnishing of prevailing wage and union wage rates; and conversion based on failure to pay his full wages under the prevailing wage law.[1]  (Complaint, ECF No. 1 ("Compl.").)

Defendants removed the state court action to this Court and flagged it as related to the original federal action.  They now seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(c) based on the doctrines of "claim splitting" and res judicata/claim preclusion.[2] (ECF No. 26.)  Plaintiff cross-moved to consolidate this action with the original action so that the claims can be tried together.  (ECF No. 33.)  The parties in the original action and this action have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

---

[1] Deckler asserted claims of failure to pay overtime in violation of the NYLL, failure to provide accurate wage statements and an initial hire notice in violation of the NYLL, failure to pay him weekly as required by NYLL, failure to pay accrued sick time as required by New York City law, fraud and conversion.

[2] The motion also moved to stay as to Deckler's claims pending resolution of the original federal action.  That aspect of the motion is moot, however, because the parties have since settled Deckler's claims.

**FACTS**[3]

Pujols worked for RTS's predecessor, Real Time Services Inc. ("Real Time") starting in or about 2007.  (Compl. at 3-4.)  RTS acquired Real Time in or about January 2016, and Pujols continued in his same position working for RTS thereafter until his termination from employment in August 2020.

His principle responsibility entailed transporting and installing commercial video/audio and ancillary equipment at clients' worksites.  (Compl. at 4.)  He received an hourly wage and overtime initially when he held the position of field technician.   He was paid bi-weekly throughout his employment.

In or about 2016, Pujols injured his shoulder and ultimately went out on workers compensation leave for rotator cuff surgery.  (Compl. at 10, 12.)  As an accommodation for his shoulder immobility and pain, in January 2018, Pujols started working as a salaried assistant manager/junior project manager, which supposedly was a "light duty" position.  (Compl. at 11.)  However, Pujols contends the supposed accommodation was in fact not one--his job duties remained the same, resulting in him being misclassified and allowing RTS to avoid paying him overtime.  Pujols also contends that he was discriminated against because of his disability (i.e., his shoulder injury) and paid less than others who did the same work by virtue of his misclassification due to his disability.

---

[3] The Court, as it must under applicable law, accepts the facts pleaded in the operative complaints as true for purposes of this motion.

Pujols reinjured his shoulder in August 2020 while performing work and filed another workers' compensation claim.  (Compl. at 12.)  When he returned to work from the injury a few days later supposedly into a light duty position, he was told his position was eliminated—a reason that plaintiff contends is a pretext for discrimination and retaliation for taking time off due to his shoulder injury.  (Compl. at 13-14.)  To add insult to injury, he contends RTS further retaliated against him by reporting to or updating his credit report with Equifax that he was "unemployed" to harm his future employment prospects.

All of the above facts are included in the complaints in both cases.  However, the complaint in this case adds certain facts not included in the original action, including that for most of 2019, Pujols worked on a public project for New York City Department of Investigations as an electrical audio/visual field technician but was not paid the prevailing wage rate and that RTS did not properly record and pay sick leave as required by New York City law.  (Compl. at 11.)  Pujols alleged that he was unaware that the project labeled "Department of Investigations" was in contract with the city of New York and therefore subject to the prevailing wage rate until RTS' deposition during the 2020 Action.  (Compl. at 28.)

**LEGAL STANDARD**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (cleaned

4

up).  "The assessment of whether a complaint's factual allegations plausibly give rise to an

entitlement to relief ... calls for enough fact[s] to raise a reasonable expectation that discovery

will reveal evidence of illegal conduct." *Lynch*, 952 F.3d at 75 (internal quotation marks

omitted).  In making this assessment, we "draw all reasonable inferences in [the plaintiff's]

favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

**DISCUSSION**

### 1. *Claim Preclusion*

Defendants' argument that this action is barred by res judicata/claim preclusion is

unpersuasive.  The doctrine of claim preclusion provides that "[a] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could

have been raised in that action."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398

(1981).  The application of the doctrine evaluates whether "the same or connected transactions

are at issue and the same proof is needed to support the claims in both suits or, in other words,

whether facts essential to the second suit were present in the first suit."  *Curtis v. Citibank,

N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).  If the claims could and should have been brought in the

first action, claim preclusion may bar the action.  *Id*. at 139-40.  Here, there has been no final

judgment on the merits in the original action.  Judge Woods merely denied Plaintiff's motion to

amend for failure to demonstrate "good cause" under Rule 16, not on futility grounds.  In

*Curtis*, the Second Circuit restated the rule that denial of the motion to amend under Rule 16 is

not a judgment on the merits.  *Id*. at 139 (citing *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir.

1999).  Thus, the doctrine of claim preclusion does not bar this action against any of the

defendants.

### 2. *Claim Splitting*

Their argument that this action is barred by the doctrine of claim-splitting requires a

closer analysis.  A plaintiff has "no right to maintain two actions on the same subject in the

same court, against the same defendant at the same time."  *Curtis*, 226 F.3d at 138.  The

doctrine protects parties from "the vexation of concurrent litigation over the same subject

matter."  *Id*. (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)).  The rule is similar to the

doctrine of claim preclusion in that it likewise fosters judicial economy and protects against

vexatious litigation.  *Id*.  When faced with a duplicative litigation, the Court may stay the action,

dismiss it, or consolidate it with the earlier action.[4]  *Id.*

---

[4] The doctrine of claim splitting does not apply when one action is pending in state court and another is pending in federal court, although other abstention doctrines potentially could apply.  *Kanciper v. Suffolk County Soc. For the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92 (2d Cir. 2013); *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp.2d 215, 222-223 (E.D.N.Y. 2006).  While Plaintiff filed this action in state court, it was removed by Defendants based on diversity jurisdiction.  Neither Plaintiff nor Defendants could locate a case from this Circuit procedurally identical to this one where the doctrine of claim splitting was applied to bar the second removed action. Defendants cited a district court case from Kentucky, but that case differs factually.  In that case, the plaintiff had filed a federal action claiming his termination was retaliatory in violation of the Family and Medical Leave Act.  In the second action, the plaintiff claimed his termination was discriminatory based on his gender in violation of Title VII of the Civil Rights Act of 1964.  The parties and evidence overlapped substantially, as did the relief sought – damages stemming from the termination.  *See DeVore v. United Parcel Service Co. (Air*), 2022 WL 509119 (W.D.Ky. Feb. 18, 2022).  While Plaintiff argues that Defendants removed to "bootstrap" a claim splitting argument, the fact is that Defendants had a right to remove – something Plaintiff knew was a risk.  Plaintiff cites no policy or legal reason why the doctrine should not apply in this situation when the doctrine is focused at least partly on promotion of judicial economy and precluding successive litigation on the same subject in the same court –both relevant here, even though one action was removed.  Further, issues of comity and concurrent jurisdiction that preclude application of the doctrine when the actions are pending in different courts are not present when both actions are pending in federal court, even if one was removed.  *See Kanciper*, 722 F.3d at 92-93.  Thus, the doctrine may apply when one of the cases has been removed so long as both cases are pending in federal court at the time the court considers the issue of claim splitting.

The Second Circuit has cautioned that a "court must be careful" not to dismiss a second suit that merely has a "rough resemblance" to the original suit. *Curtis*, 226 F.3d at 136.  It has made clear, for example, if the claims in the second action arise from events post-dating the filing of the operative complaint in the original action, the doctrine against duplicative litigation or "claim splitting" is not applicable. *Curtis*, 226 F.3d at 140.  For this reason, the plaintiffs in *Curtis* were not precluded from bringing a second action asserting claims of retaliation and constructive discharge even though they were denied permission to amend the complaint in their first action to add these claims because the claims arose from facts post-dating the amended complaint in their original suit.

Similarly, if the second action involves a different cause of action based on distinct facts such that the claims do not form a logical factual grouping for trial, the doctrine of claim splitting is not applicable. *Won v. Amazon.com, Inc.*, 2022 WL 3576738, at *12-13 (E.D.N.Y. Aug. 19, 2022).  Thus, in *Won*, a plaintiff who filed one action alleging that Amazon discriminated against her because of her status as a caregiver and military reservist in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") was not precluded from maintaining a second class action against Amazon asserting that Amazon's military leave policy violated USERRA.  The Court noted that the evidence needed to prove the cases differed, as did the relief sought. *Id.* at *14.

To determine whether the second suit is duplicative, it must involve the same parties or their privies, assert the same rights, seek the same relief, and be founded upon the same facts, or the "essential basis of the relief sought must be the same." *Id.* at *12 (quoting *The Haytian*

*Republic*, 154 U.S. 118, 124 (1894)).  Said another way, a suit may be duplicative where "the same proof is needed to support the claims in both suits" or "facts essential to the second suit were present in the first suit."  *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (quoting *Curtis*, 226 F.3d at 139).

As noted, the rule against duplicative litigation applies to an action on the same subject in the same court naming defendants "in privity with the defendants named in the original" action.  *DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012).  Whether a new defendant is in privity will depend in part on the nature of the claim.  For example, at least one court in this District has found that the doctrine did not bar a second wage and hour action brought against defendants not named in an earlier action even though the facts giving rise to the claim and relief sought were nearly identical.  *Sarikaputar v. Veratip Corp.*, 2021 WL 3914064 (S.D.N.Y. Aug. 31, 2021).  The second action merely added facts to support an allegation that the new defendants were also "employers" of plaintiffs jointly and severally liable with the defendants in the original action or entities liable as successors to one or more of plaintiffs' employers.  *Id*. The underlying misconduct – failure to pay overtime and comply with state wage and hour law – was the same in both the original and the second action.   The Court explained that the two suits did not involve the same parties or their privies.  *Id.* at * 4.  Thus, even though the Court had denied plaintiffs' motion to amend the complaint to add the new defendants in the original action on the basis of delay and prejudice, the plaintiffs were not precluded from commencing a second action in this Court against them.  *Id*.

In contrast, in a case involving breach of contract and fiduciary duty, a second action was deemed duplicative of an earlier action because the new defendant in the second action was deemed to be in privity with the defendant in the original action.  *See Branded Apparel Group LLC v. Muthart*, 2018 WL 4308545 (S.D.N.Y. Sept. 10, 2018).  In that case, the plaintiff, Supreme Showroom, Inc. ("Supreme"), had a contract with Branded Apparel Group LLC ("Branded") under which Supreme sold Branded apparel.  Muthart was president and sole owner of Supreme.  In the original action, Branded alleged that Supreme, acting through Muthart, surreptitiously agreed to act as a sales representative for a competitor of Branded in violation of the contract and in breach of its fiduciary duty to Branded.  Branded did not name Muthart as a defendant in the original action.  Near the end of discovery and after the deadline to amend or add parties in the original action, Branded sued Muthart in New York State Supreme Court asserting claims of tortious interference with contract and aiding and abetting Supreme's breach of its fiduciary duty to Branded.  Assuming without deciding that Muthart could be individually liable for Supreme's conduct, it found the second litigation duplicative because "[a]djudication of the claims against [Muthart] would necessarily involve findings on the exact same facts required to resolve the claims [against Supreme] in the first action."  *Id.* at *3.  In other words, the claims in the second action were "virtually identical challenges to the same conduct" and there was no dispute that "Muthart and Supreme" were in privity, the second action was deemed duplicative and dismissed.  *Id.*

9

In this case, two of the defendants, Armand and Cheeney, are new and are alleged to be independently liable as "employers."[5]  As in *Sarikaputar*, these defendants are not in privity with the defendants in the first action to the extent they may be independently liable. Additionally, the causes of action asserted against these new defendants are different from the causes of action asserted in the original action, and different relief is sought insofar as separate damages are sought for late payment of wages under NYLL § 191; for the differential in rate paid to him as compared to the rate required under the prevailing wage law; and for accrued, unused sick pay.  The relief sought under NYLL § 194 for paying less to Pujol than to other non-disabled employees appears to be duplicative of the relief that could be obtained under Pujol's misclassification/failure to pay overtime claims, although, as noted above, Plaintiff contends that these two new defendants are independently liable as "employers."  While it is true that the rates paid to Plaintiff and his job duties will be evidence in both cases, the original action will not evaluate the prevailing wage rate, the sick leave policy or potential non-disabled comparators.   Thus, the doctrine of claim splitting or duplicative litigation does not bar the claims against the two new defendants.

A slightly different analysis applies to defendants RTS and Warnick.  Both were named as defendants in the original action.   As noted above, the evidence about Plaintiff's job duties and pay rates will be the same in the original action and this action, as will information about Pujols' disability and alleged non-disabled comparators.  However, new evidence also will be required concerning the government project and prevailing wage rate and Defendants' sick

---

[5] Although they do not concede it, Defendants do not challenge whether these Defendants are "employers" for purposes of this motion who could be liable under the various causes of action asserted.

leave policy.  The relief sought is largely non-duplicative of the relief sought in the original

action with the exception of the relief sought under NYLL § 194 to the extent it duplicates the

relief that would be paid under Pujol's misclassification/failure to pay overtime claim in the

original action.  There is no doubt that all of the facts giving rise to the claims asserted in this

action, with the exception of the fraud and conversion claims, were known to Pujols at the time

of the third amended complaint in the original action and could have been asserted in that

action.  Indeed, that is why Judge Woods denied Pujol's motion to amend under Federal Rule of

Civil Procedure 16 – he found Pujols did not demonstrate "good cause" for amending so late in

the original action.  However, with the exception of the NYLL § 194 claim, the relief sought here

differs from the relief sought in the original action.  Therefore, the doctrine of claim splitting

does not apply to any of the claims other than the NYLL § 194 claim.  Accordingly, the Section

194 claim is dismissed under the doctrine of claim splitting.  This is consistent with the Court's

general power to manage its docket and to safeguard against tactics designed to avoid the

impact of the Court's order denying leave to amend.  *Branded Apparel*, 2018 WL 4308545, at

*5.

### 3. Consolidation

Pujols requests that this action be consolidated with the original action for trial.

Consolidation of cases is within the sound discretion of the Court.  *Johnson v. Celotex Corp.*, 899

F.2d 1281, 1284 (2d Cir. 1990).  When exercising its discretion, the Court considers the risk of

inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses

and available judicial resources posed by multiple lawsuits, the length of time to try two cases

as opposed to one, and the expense of a single trial versus two trials.  *Id*. at 1285.  The Court

also should consider the risks of prejudice to any party and confusion.  *Id*.

       Plaintiff demanded a jury trial in the original action.  (ECF No. 42.)  Plaintiffs did not

demand a jury trial in this action.  (ECF No. 21.)  Although the factual information in both cases

overlaps to the extent, there are differences.  No evidence regarding the government contract

or prevailing wage rate need be introduced in the jury trial, nor does evidence about the

frequency of Plaintiff's pay, RTS's sick leave policy or facts concerning whether Armand and

Cheeney qualify as "employers."  Background facts concerning Plaintiff's job duties and pay will

necessarily be introduced in both actions; however, there may be no need to have witnesses

testify to this information a second time in this action, as the parties may stipulate to

introduction of the trial transcript from the original action for the bench trial in this action,

thereby reducing any actual trial time in this case.  Further, in conducting a bench trial, the

Court may accept direct testimony via affidavit, potentially further reducing trial time in this

action.  Introduction of evidence irrelevant to the jury's decision in the original trial may be

confusing to the jury, which may complicate its deliberations and result in prejudice.  On

balance, the Court finds that the risk of confusion to the jury and potential prejudice stemming

therefrom, along with the fact that a bench trial in this action will not be materially more

burdensome than conducting a consolidated trial, weighs against consolidation.

## CONCLUSION

       For the reasons set forth above, Defendants' motion to dismiss is denied except as to

Plaintiff's claim under NYLL § 194.  Plaintiffs' motion to consolidate is denied.

**SO ORDERED.**

Dated:    January 9, 2023
           New York, New York

_____
                  KATHARINE H. PARKER
            United States Magistrate Judge