Susan Ghim
Law Office of Susan Ghim
244 Fifth Avenue, Suite 1434
New York, NY 10001
(917) 549-4708 / email: ghimlaw@gmail.com

February 9, 2023

Via ECF
Hon. Katherine H. Parker
Magistrate Judge
United States District Court, SDNY
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/2023

Re:   *Pujols v RTS Solutionz et al*, 22cv5455 (KHP) rel. 20 cv 10373 (KHP)
      Plaintiff's Request for alternative service by Express Mail of a subpoena for documents and a subpoena for deposition

Dear Judge Parker:

As your Honor is aware, the undersigned represents Plaintiff Faustino Pujols ("Pujols") in the above referenced related actions. At the pretrial conference held today before your Honor, the two related cases were consolidated for bench trial on or about July 17, 2023. As your Honor is further aware, the discovery deadline for third party document production and depositions is March 20, 2023 [ECF doc. 56] <u>For the reasons set forth below, Plaintiff respectfully requests alternative service by express mail of a non-party subpoenas for documents and a deposition to G-Systems, Inc. located in Farmingdale, NY, outside this district</u>. This is Plaintiff's first request for alternative service of process. Defendants did not raise objections on the record when this request was raised at the pretrial conference this afternoon.

<u>Attempted Personal Service</u>

Personal Service on G-Systems, Inc. was attempted on or about February 7, 2023 at approximately 11:40am at its Manhattan office located at 28 West 38th Street, New York, NY. The office located in a store front with the building number 28 West 38th Street, appeared empty and dark with no lights on. There were no other signs that appeared on the store front. The superintendent from the building also numbered 28 West 38th Street came outside and stated that G-Systems moved out a few months ago.

This afternoon, the undersigned counsel called G-Systems, Inc. main phone number 646-454-9877 for the Farmingdale, NY location at approximately 1:08 PM; 1:14PM and 2:56PM. During each call, the phone rang a few times and automatically disconnected the call without any voicemail messages. Attached as **Exhibit A** is a true and correct printout of G-Systems contact webpage referencing the phone number 646-454-9877 and the Farmingdale address of 109 Allen Blvd – Unit D, Farmingdale, NY 11736. Attached as **Exhibit B** is a true and correct printout of

1

the New York State Department of State Corporation information for G-Systems, Inc. that references the same Farmingdale address as its website. Attached as **Exhibit C** is a true and correct printout of the Manhattan address that references the same phone number 646-454-9877 and website with the same Farmingdale address. Defendants continue to refuse to cooperate and produce any contact information they have in their possession despite Plaintiff's request dated December 8, 2023. [**Exhibit D**]

Because the cost to hire a process server for expedited services outside NYC would be expensive, potentially costing hundreds of dollars and would not guarantee attempted service the next day, Plaintiff requests service by express mail for next day delivery to G-Systems, Inc. In the event G-Systems' Farmingdale office has also shuttered, Plaintiff would save on the costs incurred as a result of failed service of the subpoenas.

Legal Standard

FRCP 45(b) states in relevant part, "[s]erving a subpoena requires delivering a copy to the named person." In *SEC v. Pence*, the Court explained "there is no Second Circuit case law interpreting the Rule 45 requirement of delivery as requiring personal service." *See SEC v. Pence*, 322 FRD 450, 453; 2017 WL 4326077 (SDNY, September 28, 2017) Moreover, the *Pence* Court detailed that "more recent cases in this Circuit have pointed out that the language of Rule 45 does not explicitly demand personal service of a subpoena…As these cases have noted, Rule 45's language neither requires inhand service nor prohibits alternative means of service. [internal quotes and citations omitted]." *Id*. The *Pence* court instructed, "district courts in recent years have authorized alternative service that is reasonably designed to ensure that a witness actually receives a subpoena. [internal quotes and citations omitted]" *Id* at 454 For example, delivery by "certified mail reasonably insures actual receipt of the subpoena by the witness" and "comports with due process" insofar as it is "reasonably calculated under the circumstances to provide [the witness] with both notice and an opportunity to present objections. [internal citations omitted]." *Id*. at 454. The *Pence* Court also explained, "[i]n finding that alternative service is available, courts have noted that interpreting Rule 45 this way comports with the interpretive principle in Fed. R. Civ. P. 1 to construe, administer, and employ the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action and proceeding. [internal quotes and citations omitted]" Id. Moreover, under FRCP 4[1], New York State Civil Practice Law and Rules ("NYS CPLR") § 312-a[2], service by first class mail is appropriate where personal services is impractical such as where an office is a "virtual office." *Id*. at 454. NYS CPLR §2303(a) states in relevant part, "[a] subpoena requiring attendance or a subpoena duces tecum shall be served in the same manner as a summons." Accordingly, a service of a subpoena by first class mail is proper.

---

[1] Rule 4(e) states in relevant part, "an individual…may be served in a judicial district of the United States by: (1) following state law for serving a summons…"

[2] NYS CPLR 312-a states in relevant part, "Personal service my mail. (a) Service. As an alternative to the methods of personal service authorized by section 307, 308, 310, 311 or 312 of this article, a summons and complaint …may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, …together with two copies of a statement of service my mail and acknowledgment of receipt."

2

Because G-Systems' Manhattan office was shuttered, there is a likelihood that G-Systems' Farmingdale New York Office was also shuttered or has gone virtual as obviated by the inoperable Farmingdale office's phone number. Based on the risks of effectuating service, Plaintiff's costs would be minimized attempted if alternative service by express mail were permitted. Plaintiff would send the subpoenas by express mail with a signature request that is reasonably calculated to ensure speedy and actual delivery to the witness. Additionally, Plaintiff will send an additional copy of the subpoenas via certified mail with return receipt requested which the court's have deemed appropriate alternative service. *Id* at 454.

Plaintiff's need for documents and deposition from Non-Party G-Systems

G-systems was a subcontractor to Defendant RTS Solutionz, Inc. ("Solutionz") during the relevant time period, on or about September 2018 through September 2019 on the subject project worked on by Plaintiff Pujols to install audiovisual equipment for the New York City Department of Investigations ("DOI"). Plaintiff has alleged in addition to his FLSA and NYLL claims for underpayments of overtime wages based on his regular rate in case no. 20cv10373, that Defendants retained a portion of his prevailing regular and overtime wages due to him, under the state law theory of conversion in this related case 22cv5455. Defendant Jill Armand, President of Solutionz testified as Solutionz 30(b)(6) witness on or about January 24, 2023 that G-Systems was a subcontractor on the subject project for DOI during the relevant time period. [Armand Dep. Tr. 76, 2-24, 77, ln 2] Defendant Armand testified that prevailing wages are paid on "public works project, that we are told to pay our employees the prevailing wage for that project." [Armand Dep. Tr. 77, ln 18-23] Defendant Armand further testified, "when a job is prevailing wage, you have to submit certified payroll to your contract holder,…that's the rule, that's what you're supposed to do." [Armand Dep. Tr. 79, ln 16-20] Since G-Systems was a subcontractor to Solutionz during the relevant time period, G-Systems would have submitted certified payrolls to Solutionz for payment on the subject project with the DOI, a "public" or government entity. True and correct copies of excerpts of the relevant Armand deposition transcript pages are attached hereto as **Exhibit E**.

Based on the foregoing, Plaintiff respectfully requests permission to alternatively serve document and deposition subpoenas on G-Systems; and for any and other further relief that this Court deems just and proper.

Respectfully submitted,

/s/ Susan Ghim
_____
Susan Ghim

cc: VIA ECF only
All Counsel of Record for Defendants

APPLICATION GRANTED

*Katharine H. Parker*
Hon. Katharine H. Parker, U.S.M.J.

2/13/2023

3

# EXHIBIT A



ABOUT   SERVICES   WORK   CONTACT   STAFF LOGIN

# ABOUT



G-Systems provides the highest quality in telecommunication services. With experience in the industry for over 15 years, G-Systems can provide your business with state-of-the-art security and telecommunication systems.

As one of the leading telecommunications installers we offer a range of cabling solutions, from security, fire alarm, and

Case 1:22-cv-05455-KHP   Document 63-1   Filed 02/23/23   Page 6 of 17

telephone installations to data center build-outs. In addition to our installations, we offer design and project management consultant services to ensure that your project is completed accurately and efficiently.

G-Systems has serviced industries ranging from educational and government institutions to international corporations. No matter what your project is, our on-staff RCDDs will make sure your cabling infrastructure is implemented efficiently and correctly.

With our corporate office in Midtown, Manhattan and fully-stocked warehouses in Queens, Long Island, and Manhattan we offer the ability to quickly deliver your needs throughout the five boroughs and tri-state area.

Learn more about the businesses we serve here.
Learn more about all our services provided here.
Learn more about us here.

109 Allen Blvd - Unit D

Farmingdale, NY 11735

646.454.9877

© G-Systems 2020

EXHIBIT B

## Department of State
### Division of Corporations

## Entity Information

Return to Results    Return to Search

### Entity Details

**ENTITY NAME:** G-SYSTEMS INC.
**DOS ID:** 3110508
**FOREIGN LEGAL NAME:**
**FICTITIOUS NAME:**
**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION
**DURATION DATE/LATEST DATE OF DISSOLUTION:**
**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW
**ENTITY STATUS:** ACTIVE
**DATE OF INITIAL DOS FILING:** 10/06/2004
**REASON FOR STATUS:**
**EFFECTIVE DATE INITIAL FILING:** 10/06/2004
**INACTIVE DATE:**
**FOREIGN FORMATION DATE:**
**STATEMENT STATUS:** CURRENT
**COUNTY:** NASSAU
**NEXT STATEMENT DUE DATE:** 10/31/2022
**JURISDICTION:** NEW YORK, UNITED STATES
**NFP CATEGORY:**

ENTITY DISPLAY    NAME HISTORY    FILING HISTORY    MERGER HISTORY    ASSUMED NAME HISTORY

#### Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** G-SYSTEMS INC.
**Address:** 109 ALLEN BLVD, STE D, FARMINGDALE, NY, UNITED STATES, 11735

**Electronic Service of Process on the Secretary of State as agent:** Not Permitted

#### Chief Executive Officer's Name and Address

**Name:** JOE GAVIN
**Address:** 109 ALLEN BLVD, STE D, FARMINGDALE, NY, UNITED STATES, 11735

#### Principal Executive Office Address

**Address:** 109 ALLEN BLVD, STE D, FARMINGDALE, NY, UNITED STATES, 11735

#### Registered Agent Name and Address

**Name:**
**Address:**

#### Entity Primary Location Name and Address

**Name:**
**Address:**

## Farmcorpflag

**Is The Entity A Farm Corporation:**  NO

## Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00000 |

EXHIBIT C

# 28 W 38th St, New York, NY 10018

G-Systems, Inc., Address

http://gsystemsinc.com

### G-Systems

**G-Systems**, Inc. provides the highest quality in telecommunication services. With experience in the industry for over 15 years, **G-Systems**, Inc. can provide ...



https://www.yelp.com › ... › G-Systems

### G-SYSTEMS - 109 Allen Blvd, Farmingdale, NY - Yelp

G-Systems is located at **109 Allen Blvd, Farmingdale, NY**. Is this your business? Respond to reviews and customer messages. Claiming is free, ...



https://www.zoominfo.com › glv-systems-inc

### G-Systems - Overview, News & Competitors | ZoomInfo.com

Where is G-Systems located? G-Systems's headquarters are located at **109 Allen Blvd Unit D, Farmingdale, New York, 11735**, United States



### G-Systems, Inc.

Website · Directions · Save

5.0 ★★★★★ 1 Google review

Telecommunications contractor in New York City, New York

**Located in:** Jay Suites Fifth Avenue

**Address:** 28 W 38th St, New York, NY 10018

**Phone:** (646) 454-9877

Suggest an edit

### Add missing information

Add business hours

### Questions & answers

# EXHIBIT D



Susan Ghim <sghim@ghimlaw.com>

## Pujols v. Solutionz 22cv5455 Subpoena
1 message

**Susan Ghim** <sghim@ghimlaw.com>  Thu, Dec 8, 2022 at 11:42 AM
To: "Nicholas J. Schuler, Jr." <nschuler@chuhak.com>
Cc: "Daniel J. Fumagalli" <dfumagalli@chuhak.com>

Nick / Dan:

See attached response from NYC Department of Investigations (DOI).  They stated that no record of any contracts between NYC DOI and Solutionz existed for 2019.  Accordingly, we request that you turn over documents relating to the DOI project pursuant to our last deficiency notice and supplemental requests.

We also request that you amend your clients' 26a disclosure to include your clients' contact at DOI or general or sub contractors that Solutionz used for Plaintiff's work during 2019.

Susan Ghim


---------------------------------------------
Susan Ghim
Law Office of Susan Ghim
244 Fifth Avenue, Suite 1434
New York, NY 10001
(917) 549-4708
_____
This email and its attachments if any, may contain attorney - client privileged and / or confidential information.  If you are not the intended or named recipient, please notify the sender immediately and permanently delete this email, its contents and/or attachments if any.  Any dissemination, reproduction, copying or printing of this email and its attachments if any, are strictly prohibited.

📄 **NYC DOI Response to Subpoena Pujols-22cv5455.pdf**
935K

EXHIBIT E

```
 1
 2     UNITED STATES DISTRICT COURT
 3     SOUTHERN DISTRICT OF NEW YORK
 4     Case No. 22-cv-5455(GHW)
 5     ---------------------------------------x
 6     FAUSTINO PUJOLS and RUSS DECKLER,
 7                    Plaintiffs,
 8         - against -
 9     RTS SOLUTIONZ, INC. and as successor to
10     Real Time Services, Inc., BILL WARNICK,
11     CEO; JILL ARMAND, President; and KYLEE
12     CHEENEY, V.P. Human Resources,
13     Individually
14                    Defendants.
15     ---------------------------------------x
16                  January 24, 2023
                    10:30 a.m.
17
18     Deposition of 30(b)(6) Witness JILL
19     ARMAND, taken by the Plaintiffs, pursuant
20     to Notice, held via Zoom, before Tammy
21     O'Berg, a Shorthand Reporter and Notary
22     Public of the State of New York.
23
24
25
```

|  | Page 74 |  | Page 76 |
|---|---|---|---|
| 1 | JILL ARMAND | 1 | JILL ARMAND |

Page 74
1   JILL ARMAND
2   Q.  Okay.  And do you recognize this
3   project, because right before that it says
4   NYP1 -- 1NYP-11th floor?
5   A.  I believe that that stands for 1
6   New York Plaza.
7   Q.  Would that have been for a
8   Morgan Stanley location at 1 New York
9   Plaza?
10  A.  That's what the data is telling
11  us.
12  Q.  So it's under -- and this
13  column, that description, is under the
14  column entitled Project Name?
15  A.  Correct.
16  Q.  So do you recall, in 2022 and
17  after 2020 -- I'm sorry.
18      MS. GHIM:  You know what, just
19  strike that.  Oh, my God.
20  Q.  So after August 10th, 2020, do
21  you recall if this project for Morgan
22  Stanley was ongoing?
23  A.  I don't know that answer.
24  Q.  So it could be an open project
25  for Morgan Stanley, correct?

Page 75
1   JILL ARMAND
2   A.  Yes.
3       MS. GHIM:  Then I have to put up
4       another document.  Just want to round
5       out my questioning about the
6       Department of Investigations project.
7       So, Madam Court Reporter, could
8       you please mark this for
9       identification as exhibit -- I'm
10      sorry.  This was an exhibit to the
11      deposition transcript of Russ Deckler,
12      which was Exhibit E.  So you don't
13      have to mark this one, Miss O'Berg.
14      Thank you.  Sorry about that.
15  BY MS. GHIM:
16  Q.  So, Miss Armand, this document,
17  the first page of it states Purchase Order
18  on the right, and then on the left it has
19  RTS Solutionz's address stamp.
20      Do you recall seeing this
21  document?
22  A.  Seen before, no, but I know what
23  it is.
24  Q.  Okay.  So it says, PO issued to
25  G-Systems Inc.

Page 76
1   JILL ARMAND
2       Who is G-Systems Inc.?
3   A.  They are a subcontractor for New
4   York for union labor.
5   Q.  Why did you need a subcontractor
6   for union labor?
7   A.  It's the requirement of that job
8   to have union labor.  We're not a union
9   shop.
10  Q.  Okay.  Do you recall if the bid
11  specification on this job for Department
12  of Investigations, if it required union
13  labor?
14  A.  It did.
15  Q.  Okay.  And you see in the middle
16  of the page -- sorry.  What did I just do?
17      In the middle of this Purchase
18  Order document, in the middle, in the
19  shaded portion, it says, Order details,
20  and it says, 157906, Department of
21  Investigation:  NY-180 Maiden Lane,
22  16th-24th floors.
23      And that is the Department of
24  Investigations that we have been talking
25  about, right, this project where the GC

Page 77
1   JILL ARMAND
2   is -- what was the name again?  JNT?
3   A.  So tell me what question I'm
4   answering?
5   Q.  I'm just setting it up for you
6   just so that you recall what we were --
7   A.  I'm aware.
8   Q.  So do you know if G-Systems
9   Inc., the subcontractor's workers were
10  paid a different rate than Mr. Pujols on
11  this job?
12  A.  I don't.  I can't answer for
13  them.  I don't know what they paid their
14  staff.  I pay them.
15  Q.  Are you familiar with the term
16  "prevailing wages"?
17  A.  Oh, yeah.
18  Q.  And what are prevailing wages?
19  A.  It's typically on a public works
20  project, that we are told to pay our
21  employees the prevailing wage for that
22  project.  There's a specific rate card for
23  each project that you have to abide by.
24  Q.  And this Department of
25  Investigation project was for the City of

|  |  |
|---|---|
| Page 78<br>1  JILL ARMAND<br>2 New York, correct?<br>3    A.  I don't know that answer.<br>4    Q.  Is 180 Maiden Lane located in<br>5 Manhattan?<br>6    A.  I believe so.<br>7    Q.  Do you know if the employees of<br>8 G-Systems Inc. were paid pursuant to a<br>9 union rate?<br>10    A.  I don't know that, but that's<br>11 what I paid them to do.<br>12    Q.  Do you recall submitting<br>13 payrolls for G-Systems workers to the City<br>14 of New York?<br>15    A.  That's not my job.<br>16    Q.  And who would have done that for<br>17 the subcontractor -- for the<br>18 subcontractor?<br>19    A.  So in our business G-Systems<br>20 will provide those payroll reports, and<br>21 they will submit them directly to the<br>22 general contractor; or they will submit it<br>23 through my accounting people directly,<br>24 then we send it to the general contractor.<br>25 But they're created by our subcontractor, | Page 80<br>1  JILL ARMAND<br>2    Q.  Do you know if G-Systems<br>3 submitted certified payrolls to the<br>4 general contractor on this project?<br>5    A.  I don't know that.  But this<br>6 project was union, so there was no<br>7 certified payroll required.<br>8    Q.  Do you know that for certain?<br>9    A.  I'd probably want to review the<br>10 contract for certain, but that's my --<br>11 that's my thought on this.<br>12    Q.  Okay.<br>13       MS. GHIM:  I'm going to call for<br>14    the production of that contract, Mr.<br>15    Schuler, because that was not<br>16    produced.<br>17       I need the contract between<br>18    Solutionz and the general contractor,<br>19    in addition to the bid that we were<br>20    speaking of earlier, and I also need a<br>21    contract between Solutionz and<br>22    G-Systems.<br>23       (Information requested.)<br>24 BY MS. GHIM:<br>25    Q.  So, Miss Armand, we were talking |
| Page 79<br>1  JILL ARMAND<br>2 G-Systems.<br>3    Q.  So with your understanding of<br>4 prevailing wages, do you understand --<br>5 what do you understand the payroll process<br>6 to be if you're working on a government<br>7 project?<br>8    A.  Can you repeat the question?  Is<br>9 this a generic question about --<br>10    Q.  Sure.  I'll be more specific.<br>11       Are you aware if you're supposed<br>12 to submit weekly payrolls to the<br>13 government entity that you're working for?<br>14    A.  So you're asking me a generic<br>15 question, and what I will tell you -- the<br>16 answer is that, when a job is prevailing<br>17 wage, you have to submit certified payroll<br>18 to your contract holder, if that's what<br>19 you're asking me.  That's the rule.<br>20 That's what you're supposed to do.<br>21    Q.  Okay.  Great.<br>22    A.  Generically.<br>23    Q.  So the certified payrolls would<br>24 go to the general contractor?<br>25    A.  Correct. | Page 81<br>1  JILL ARMAND<br>2 earlier about how Mr. Pujols was promoted<br>3 into a junior project manager position on<br>4 or about 2018, right?<br>5    A.  Yes.<br>6    Q.  Okay.  Do you recall whether he<br>7 was paid a salary or whether he was paid<br>8 hourly as a project manager -- junior<br>9 project manager?<br>10    A.  I was not involved in that<br>11 promotion, so I don't know at the time<br>12 what was decided.<br>13    Q.  Okay.  And that's -- you -- and<br>14 that's you testifying personally?<br>15    A.  Yes, personally, because I was<br>16 not president at the time of that<br>17 negotiation.<br>18    Q.  After you became president, did<br>19 you become aware of whether Mr. Pujols was<br>20 earning a salary or being paid hourly?<br>21    A.  I believe I knew he was<br>22 salaried.<br>23    Q.  Do you know what his annual<br>24 salary was?<br>25    A.  I don't. |